IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT
FEB 15 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:18-CR-74 |
| JOSE MAURICIO CASTANEDA GARZON, | |
| *Defendant.* | |

## STATEMENT OF FACTS

The United States and the defendant, Jose Mauricio Castaneda Garzon, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From in and around 2017 through in and around April 2018, within the jurisdiction of the Eastern District of Virginia, and elsewhere, the defendant, JOSE MAURICIO CASTANEDA GARZON, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with co-defendants ANTONIO ALDEMAR AVILA ACEVEDO and FABIAN ANDRES LEYTON VARGAS, and others both known and unknown, to unlawfully, knowingly and intentionally distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, having reasonable cause to believe it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960, and 963.

2. It was part of the conspiracy that the defendant and his co-conspirators trafficked multi-hundred kilogram quantities of cocaine, valued at millions of United States dollars, around the world by causing such cocaine to be secreted aboard commercial shipping containers in the Port of Santa Marta, Colombia. The defendant and his co-conspirators used multiple commercial

import/export companies as "front" companies to create a façade of legitimacy to conceal their cocaine trafficking activities.

3. It was further part of the conspiracy that the defendant and his co-conspirators obtained large-scale quantities of cocaine from suppliers in Colombia, and facilitated this cocaine passing through the Port of Santa Marta in part by bribing, or causing others to bribe, security and law enforcement officials in the port. The defendant and his co-conspirators then arranged for these same bribed officials to be responsible for inspecting cargo in which cocaine was hidden, and therefore turn a blind eye to contraband leaving the port.

4. In and around June 2017, AVILA ACEVEDO and LEYTON VARGAS approached a security and inspection officer ("Officer 1") in the port of Santa Marta, Colombia, and asked Officer 1 to assist them in smuggling cocaine through port security for export and distribution in locations around the world. AVILA ACEVEDO offered to pay a bribe to Officer 1 in exchange for his help in facilitating their cocaine trafficking endeavors.

5. On or about July 24, 2017, the defendant, AVILA ACEVEDO, and LEYTON VARGAS, met with Officer 1 to discuss a pending load of cocaine to be smuggled out of the port on or about July 27. The co-conspirators discussed bribing law enforcement officers, and which bribed officials that Officer 1 should assign to assist with the inspection that day. The defendant described how the cocaine would be hidden in the shipping container, and told Officer 1 that the shipment would contain a total of 800 kilograms of cocaine.

6. On or about July 27, 2017, the defendant, AVILA ACEVEDO, and LEYTON VARGAS caused approximately 1,773 kilograms of cocaine to enter the Port of Santa Marta, Colombia. The defendant and his co-conspirators intended to ship this cocaine aboard a commercial maritime vessel destined for Guatemala, which is a transshipment point for cocaine

destined for importation into the United States. However, law enforcement seized the cocaine before it could depart the port.

7. In and around August 2017, LEYTON VARGAS and the defendant met with Officer 1 and told Officer 1 that they did not blame him for the seizure. Instead, the co-conspirators continued to solicit Officer 1's assistance with smuggling loads of cocaine out of the port of Santa Marta. On or about August 19, 2017, the defendant and LEYTON VARGAS paid Officer 1 approximately $56,700 in United States currency for his assistance in facilitating their cocaine smuggling efforts.

8. In and around October 2017, Officer 1 met with the defendant and LEYTON VARGAS to discuss another pending load of cocaine bound for Guatemala. When Officer 1 asked whether the shipment would ultimately end up in the United States, the defendant and LEYTON VARGAS indicated that this was likely. The co-conspirators paid Officer 1 approximately $33,000 in United States currency for his assistance in facilitating their cocaine smuggling efforts.

9. In and around March 2018, AVILA ACEVEDO, LEYTON VARGAS, and the defendant again solicited Officer 1's help to smuggle a shipment of cocaine out of the Port of Santa Marta. The co-conspirators told Officer 1 that the shipment would be concealed in wooden crates containing paper in order to conceal the cocaine. AVILA ACEVEDO paid Officer 1 at least $18,000 for his assistance in facilitating this shipment of cocaine.

10. On or about March 27, 2018, the defendant, AVILA ACEVEDO, and LEYTON VARGAS caused approximately 2,081 kilograms of cocaine to enter the Port of Santa Marta, Colombia. The defendant and his co-conspirators intended to ship this cocaine aboard a commercial maritime vessel destined for Veracruz, Mexico, which is another transshipment point for cocaine destined for importation into the United States. However, law enforcement seized the

cocaine before it could depart the port. The cocaine was hidden in wooden crates that appeared to contain paper, as the defendant and his co-conspirators described.

11. During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution of, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 450 kilograms of a mixture and substance containing a detectable amount of cocaine.

12. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

13. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

14. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: *(signature)*
Katherine E. Rumbaugh
David A. Peters
Assistant United States Attorneys

Arthur Wyatt
Chief, Narcotic and Dangerous Drug Section
Criminal Division, U.S. Department of Justice

By: *(signature)*
Anthony Aminoff
Michael Waits
Trial Attorneys, Narcotic Dangerous Drug Section
Criminal Division, U.S. Department of Justice

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JOSE MAURICIO CASTANEDA GARZON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: 02-11-19

_____
Jose Mauricio Castaneda Garzon
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 2/11/19

_____
Cadence Mertz, Esq.
Attorney for the Defendant